IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HAROLD RAY MANNING, | § | |
| TDCJ-CID No. 1270715, | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION H-08-3500 |
| RICK THALER,[1] | § | |
| Respondent. | § | |

<u>OPINION ON DISMISSAL</u>

Petitioner Harold Ray Manning, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his capital murder conviction. (Docket Entries No.7, No.10).   He has also filed two memoranda in support of his petition. (Docket Entries No.2, No.8).   Respondent has filed a motion for summary judgment and a supplemental motion for summary judgment.   (Docket Entries No.12, No.18).   Petitioner has filed a response to each motion.   (Docket Entries No.14, No.24).   After considering all pleadings and the entire record, the Court will grant respondent's motion for summary judgment and dismiss this habeas petition.

<u>I. BACKGROUND AND PROCEDURAL HISTORY</u>

On August 10, 2004, petitioner was convicted of capital murder in the 187th Judicial District Court of Harris County, Texas in cause number 960731.   *Manning v. State*, No.01-04-00866-CR, Clerk's Record, page 82.   He was sentenced to confinement for life in

---

[1] Rick Thaler has replaced Nathaniel Quarterman as the Director of the Texas Department of Justice-Correctional Institutions Division.  Accordingly, Thaler is automatically substituted as a party. Fed. R. Civ. P. 25(d)(1).

TDCJ-CID.   *Id.*   The First Court of Appeals for the State of Texas summarized the facts

presented to the jury, as follows, in pertinent part:

> On the night of November 25, 2002, at approximately 11:40 p.m., Pasadena Police Department ("PPD") Officer Chris Sadler responded to a priority call at a townhome in the East District of Pasadena.  Upon finding the townhome's front door wide open, Officer Sadler discovered a man--later identified as James "Jimmy" Wilson--lying on his stomach in a four-to-five-foot-wide pool of blood.  One of the townhome's three residents--later identified as Diana Sanchez--was attempting to hold Wilson up out of the pool of blood and was yelling for help.  A second victim--later identified as Randal Ainsworth and also one of the townhome's three residents--was found dead in the kitchen area.

> As Officer Sadler entered the residence, he saw Albert Mata--Sanchez's boyfriend and one of the townhome's three residents--and Glen Kuykendall, a friend of Ainsworth's, attempting to flee the residence out of a back door.  Both men were detained before they could leave the scene.  It was learned that, upon finding Ainsworth's deceased body in the townhome, Sanchez and Mata had immediately left because they were uncertain if the perpetrators were still inside the residence. After leaving, they went to a nearby store to call Kuykendall.  Sanchez and Mata then returned to the townhome where they discovered Wilson alive.  Sanchez rendered assistance to Wilson while Mata called "9-1-1."  At some point, Kuykendall arrived to offer assistance.  The police arrived approximately 15 to 20 minutes after Sanchez had entered the townhome.  Both Wilson and Ainsworth were found bound with duct tape around their wrists, head, and mouth.  Wilson was later loaded onto a helicopter and life-flighted to receive medical care.  He had suffered a slashed neck and 19 stab wounds. As a result of these injuries, Wilson underwent surgery to retrieve a piece of a metal knife that had been left in his body, as well as to repair the lining around his spinal cord.  Ainsworth's autopsy revealed that he died from multiple sharp-force injuries.

> Earlier on the night of the murder, Wilson had gone to the East Pasadena townhome to watch television and to smoke marihuana.  While there, he saw appellant negotiate to purchase 10 pounds of marihuana from Ainsworth.  After the deal was complete, appellant left, and Wilson and Ainsworth went to eat at a nearby restaurant.  Shortly after Wilson and Ainsworth had returned to the townhome, appellant re-entered the townhome with a gun and ordered Wilson to lie on the dining-room floor. Appellant then began questioning Ainsworth as to the location of money and marihuana.   Ainsworth directed appellant to an upstairs closet.

Appellant then went upstairs twice and, on the second trip down, was carrying bags of marihuana.

During this sequence of events, there was a second, unidentified intruder who stood to Wilson's left as Wilson lay on his stomach in the dining room. Because Wilson could not see the intruder's face and because the intruder did not speak, Wilson was unable to identify him or her. At that point, Wilson's throat was cut; two people, whose faces Wilson could not see, taped him up; and, after having lain taped up for a few minutes, Wilson heard one of the two intruders say, "Let me do this white boy." Wilson then felt someone straddle his back, punch him in the back of the head, and, finally, Wilson felt a tingling sensation across his whole body.

Two days prior to Ainsworth's murder, Ainsworth and his neighbor had been returning from buying groceries when they encountered appellant waiting outside of Ainsworth's townhome. Appellant told Ainsworth that he was "slipping," that he needed to watch himself because he had been leaving his townhome unlocked, and that somebody could get him.

At some point in November of 2002--the month of the murder--appellant told his girlfriend, Laveka Montresse McNeil, that he wanted to rob Ainsworth and Mata.  Appellant even admitted to contacting his co-conspirator, an individual known as "D.D." or "D.Lo.," in order to enlist his assistance with the robbery.  On the night of the murder, prior to the robbery, appellant and his co-conspirator gathered several items in preparation for the robbery, including duct tape, a gun, a knife, and black clothing.  After having left his residence with these items and having been gone for three hours, appellant and his co-conspirator returned to appellant's residence at approximately 1:00 a.m. with 40 pounds of marihuana, which they divided among themselves.

Perhaps the most damaging evidence against appellant came from appellant's own girlfriend, McNeil, who testified that on the day after the murder, while she and appellant were watching the news on television, a story came on regarding a murder and robbery in which one of the victims had been life-flighted to the hospital to receive medical care.  McNeil testified that appellant, in reaction to this news story, declared, "Damn, he lived."

*Manning v. State*, No.01-04-00866-CR, 2006 WL 2506777 at *1-2 (Tex. App.—Houston [1st

Dist.], pet ref'd).

On direct appeal, petitioner argued that the evidence was legally insufficient to support his conviction and the state district court erred in allowing the State to question a panel of prospective jurors on the law of the parties and to give a jury charge that included the law of the parties.  *Id.* at 81.  The intermediate state appellate court affirmed the state district court's judgment on August 31, 2006.  *Id.*  On January 10, 2007, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review.  *Manning v. Texas*, P.D.R. 1721-06.  Petitioner did not file a petition for writ of *certiorari* in the United States Supreme Court.

On December 21, 2007, petitioner sought state habeas relief on the following grounds:

1.     The state district court erred by (a) giving the jury an inaccurate statement of the law regarding the voluntariness of petitioner's video confession in the jury charge; (b) admitting inflammatory autopsy photographs; (c) denying petitioner's motion to suppress the video confession; (d) denying petitioner's request for a charge on the lesser-included offense of murder; (e) overruling petitioner's motion for new trial; and (f) denying a mistrial after the prosecutor made inappropriate remarks during closing argument;

2.     The prosecutor engaged in misconduct in his closing argument that prejudiced petitioner and inflamed the jury; and,

3.     Petitioner was denied the effective assistance of counsel at trial when his trial counsel failed to (a) object to the prosecutor's improper statements; (b) secure the presence of two defense witnesses; (c) thoroughly cross-examine police officers; and (d) object to the misstatement of law in the jury charge.

*Ex parte Manning*, Application No.WR-328-01, pages 2-57.  Petitioner later sought to amend his state habeas application to challenge the effectiveness of his appellate counsel's representation.  *Id.*, pages 109-31.

4

Petitioner's trial counsel submitted two affidavits regarding his representation per order of the state district court sitting as a habeas court. *Id.*, pages 102-03, 133. The state habeas court found counsel's attestations credible, entered findings, and recommended that habeas relief be denied. *Id.* at 139-142. On August 20, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order on findings of the trial court without a hearing. *Id.* at action taken page.

Petitioner filed a federal habeas petition on November 25, 2008 (Docket Entry No.1), a supplemental petition on January 12, 2009 (Docket Entry No.7), and an amended petition on February 5, 2009. (Docket Entry No.10). He seeks relief on the following grounds:

1. The state district court abused its discretion by (a) overruling his motion to suppress his confession; (b) overruling his motion for new trial; and, (c) denying a mistrial based on the State's improper closing argument;

2. Petitioner was denied the effective assistance of counsel on appeal because appellate counsel failed to raise prosecutorial misconduct on direct appeal;

3. Petitioner was denied the effective assistance of counsel at trial because trial counsel failed to (a) object to the State's mischaracterization of a witness's testimony; (b) secure the presence of a witness, and, (c) vigorously cross-examine the State's witnesses at the pretrial suppression hearing; and,

4. The evidence is legally insufficient to support his conviction.

(Docket Entries No.7, No.10).

Respondent moves for summary judgment on grounds that some of petitioner's claims are procedurally barred, petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and his claims fail on the merits. (Docket Entries No.12, No.18).

5

## II. STANDARD OF REVIEW

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Under the AEDPA, the petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in a petition for discretionary review and a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order on the trial court's findings without a hearing.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves

as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner in the petition for discretionary review and state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers")).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the

state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  To be unreasonable, the state decision must be more than merely incorrect.  *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  *Id.*  Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 2254 Cases in District Courts).  Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.  *Id.*  Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188

F.3d 250, 255 (5th Cir. 1999).  Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them.  *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III. ANALYSIS

### A. Sufficiency of the Evidence to Support Conviction

Petitioner contends that the evidence is legally insufficient to support his capital murder conviction.  (Docket Entry No.7).  Petitioner claims that the State failed to prove that he conspired with Darian Sam ("Sam") to commit the offense and that because Sam was convicted under the law of the parties, he could not also be convicted as a party under Texas law.  (*Id*.).

Co-conspirator Sam, however, was not convicted as a party to capital murder. Although he was charged with capital murder, Sam entered a guilty plea to the lesser-included offense of aggravated robbery, without an agreed recommendation as to punishment.  *Sam v. State*, No.01-05-01037-CR, 2007 WL 1228487 (Tex. App.—Houston [1st Dist.] 2007, pet ref'd). In his Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession, Sam admitted that he killed Ainsworth when he confessed that "while in the course of committing and attempting to commit ROBBERY of RANDAL AINSWORTH, [he] intentionally cause[d] the death of RANDAL AINSWORTH by STABBING RANDAL AINSWORTH WITH A DEADLY WEAPON, NAMELY A KNIFE."  *Id.*

Notwithstanding Sam's confession and conviction, which occurred after petitioner's trial, the record reflects sufficient evidence to support petitioner's conviction for

capital murder.  A federal court tests the sufficiency of evidence in a federal habeas review of a state court conviction under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction if when viewed in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that the accused committed the essential elements of the crime.  *Id.* at 319.  The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.  *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).

Under Texas law as applied to the facts of this case, a person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit robbery.  *See* TEX. PEN. CODE ANN. § 19.03(a)(2) (Vernon 2003).  A person may also be held criminally responsible for an offense committed by the conduct of another person under state law "if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."  *See id*. § 7.02(a)(2). Likewise, "[i]f, in the attempt to a carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."  *See id*. § 7.02(b).

In this case, the jury was instructed on three theories of capital murder, as noted by the First Court of Appeals for the State of Texas:

> [I]f you find from the evidence beyond a reasonable doubt that ... the defendant, Harold Manning, did then and there unlawfully, while in the course of committing or attempting to commit the robbery of Randal

Ainsworth, intentionally cause the death of Randal Ainsworth by stabbing Randal Ainsworth with a deadly weapon, namely a knife; or

[i]f you find from the evidence beyond a reasonable doubt that ... [co-conspirator], did then and there unlawfully, while in the course of committing or attempting to commit the robbery of Randal Ainsworth, intentionally cause the death of Randal Ainsworth by stabbing [him] with a deadly weapon, namely a knife, and that the defendant, Harold Manning, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Darian Sam [the co-conspirator] to commit the offense, if he did; or

[i]f you find from the evidence beyond a reasonable doubt that the defendant, Harold Manning, and [co-conspirator] entered into an agreement to commit the felony offense of robbery of Randal Ainsworth, and pursuant to that agreement, if any, they did carry out their conspiracy and ... while in the course of committing such robbery of Randal Ainsworth, Darian Sam intentionally caused the death of Randal Ainsworth by stabbing [him] with a deadly weapon, namely a knife, and the murder of Randal Ainsworth was committed in furtherance of the conspiracy and was an offense that the defendant should have anticipated as a result of carrying out the conspiracy, then you will find the defendant guilty of capital murder, as charged in the indictment.

*Manning*, 2006 WL 2506777 at *2-3 (footnotes omitted).  "The jury found appellant guilty of capital murder 'as charged in the indictment.'"  *Id*. at *3.

The First Court of Appeals for the State of Texas found the following evidence to support petitioner's conviction:

Viewed in the light most favorable to the verdict, the evidence established that appellant wanted to rob Ainsworth and Mata of their marihuana; that appellant enlisted a co-conspirator's help to assist with the robbery; that appellant and his co-conspirator gathered a knife, duct tape, a gun, and black clothing in preparation for the robbery; that appellant entered Ainsworth's townhome with a gun and a knife on the night of the murder; that Ainsworth was stabbed at least 19 times and died as a result; that on the night of the murder, appellant returned to his residence with approximately 40 pounds of marihuana after having been gone for three hours; and that appellant was shocked to learn, as evidenced by his declaring, "Damn, he lived," from the news program that Wilson had survived his attack.

11

*Manning*, 2006 WL 2506777 at *6.   The First Court of Appeals found "[t]he jury could reasonably infer from this evidence that appellant should have anticipated that someone, be it himself or his co-conspirator (a distinction that is irrelevant under section 7.02(b)), would intentionally or knowingly cause someone's death in furtherance of the robbery."   *Id.*   The First Court of Appeals noted that "the evidence establishes that Ainsworth's killing was done to facilitate the taking of the marihuana and was not incidental to it."   *Id.*   Because the evidence was sufficient to support petitioner's conviction as a co-conspirator under § 7.02(b), the intermediate appellate court declined to determine whether the evidence showed that petitioner intentionally caused complainant's death or that he solicited, encouraged, directed, aided, or attempted to aid a co-conspirator.   As noted by the intermediate appellate court in its reference to *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992), "'when the jury returns a general verdict and the evidence is sufficient to support a guilty finding under any of the allegations submitted, the verdict will be upheld.'"   *Manning*, 2006 WL 2506777 at *6.

The state appellate courts' legal sufficiency analysis satisfies the *Jackson v. Virginia* standard and is supported by the record.   *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (applying the *Jackson v. Virginia* standard in reviewing the sufficiency of the evidence to support a conviction).   Accordingly, petitioner has failed to carry his heavy burden to show that the state courts' determination of this issue was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding or that such decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.   Respondent is entitled to summary judgment on this ground.

<u>B. Effective Assistance of Counsel</u>

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.  Although the state habeas record is unclear as to whether the state habeas courts granted petitioner's to amend his state habeas application to challenge the effectiveness of his appellate counsel's representation, the state habeas courts entered a finding regarding the effectiveness of appellate counsel's representation.  *Ex parte Manning*, Application No.WR-70,328-01, page 140.  Therefore, the Court will address both ineffective assistance of counsel claims.

<u>1. Trial Counsel</u>

A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy."  *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the

result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993). Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90. A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

<u>a. Failure to Object</u>

Petitioner contends that his trial counsel rendered constitutionally ineffective assistance when he failed to object to the prosecutor's misstatement in closing arguments

14

regarding length of the knife blade that petitioner routinely carried.  (Docket Entry No.2, pages 30, 39).   Petitioner's former girlfriend Laveka McNeil ("McNeil") testified that petitioner routinely carried a six-inch blade with him and that he had it on him on the night of the offense.  *Manning v. State*, No.01-04-00866-CR, Reporter's Record, Volume 7, pages 83-84, 91.   The record shows that the maximum penetration of the wounds to complainant's left side of his head was three inches, which was consistent with a three-inch knife blade.  *Manning v. State*, No.01-04-00866-CR, Reporter's Record, Volume 9, pages 101-02.   The medical examiner, however, attested that she could not tell the length of the knife blade from her examination of the wounds.  *Id.*, pages 115-16.  The prosecutor, nevertheless, argued the following in pertinent part:

> You may also look at—when you look at guilt as a principle, the murder weapon, we talked about that.  And guess what, we didn't have it.  We don't know where it is, but you know from the testimony that the defendant habitually wears a blade, approximately a three-inch blade.  He wears it all the time.  He wears it when he deals drugs.  He had it, actually wears it when he committed this offense, suddenly it's gone, the murder weapon is gone.  He has it all the way up to that point, and then he comes back and we don't have the murder weapon.  I submit to you it's because he got rid of the murder weapon wherever, and as fast as he possibly could, because it would be increadibly [sic] damaging because the point of that blade was left in that boy's neck, which had to be dug out weeks later.  The blade there is considerable evidence that he is the primary actor, but some jurors may be considering that maybe.

*Manning v. State*, No.01-04-00866-CR, Reporter's Record, Volume 10, page 90.  The prosecutor then argued the facts that supported the two other theories of capital murder for which petitioner had been indicted, *i.e.*, the law of the parties and the law of conspiracy.  *Id.*, pages 90-93.

"[C]ounsel's failure to object to improper remarks by a prosecutor is not ineffective assistance unless the remarks are so prejudicial as to render the trial fundamentally unfair."  *Jones v. Estelle*, 632 F.2d 490, 492-93 (5th Cir. 1980).  Although the prosecutor's reference to the three-inch blade was a misstatement of McNeil's testimony, the error did not

15

infect the entire trial with such unfairness that petitioner was denied due process.[2]   The prosecutor did not review evidence regarding the depth of complainant's wounds that were caused by the knife blade or testimony that a three-inch blade could have caused some of complainant's injuries.  The prosecutor reminded jurors that petitioner routinely carried a knife that was capable of causing complainant's death and that petitioner's knife was missing after the murder, most likely because it was the murder weapon.  The misstatement regarding the length of the knife blade was insubstantial, particularly in light of the overwhelming evidence of petitioner's guilt as a co-conspirator to the robbery-murder.

Petitioner's trial counsel attested in state habeas proceedings that he did not remember if he felt the argument was an improper characterization of the knife or if it helped or hurt the case.  *Ex parte Manning*, Application No.WR-70,328-01, page 102.  The state habeas courts found that petitioner failed to show that his trial counsel's conduct was deficient or prejudicial.  *Id.*, page 140.

The prosecutor's misstatement in this case does not amount to misconduct; therefore, the failure to object to such misstatement does not amount to constitutionally ineffective assistance of counsel.  *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").

---

[2] Petitioner attempts to show harm by arguing that his video-taped confession was inadmissible because he was not informed that the statement was being recorded and that if such evidence had been excluded, evidence regarding the murder weapon, *i.e.*, the size of the blade used to inflict complainant's wounds, would have been the State's primary evidence.  Petitioner argues under such circumstances, the prosecutor's misstatement regarding the blade size would have misled the jury into believing that petitioner was the primary actor.  (Docket Entry No.2).  The Court does not address this argument because the admissibility of the videotaped confession is not at issue here.

<u>b. Uncalled Witness</u>

Next, petitioner contends that his trial counsel rendered constitutionally ineffective assistance by failing to secure the presence of a defense witness.  Petitioner maintains that trial counsel failed to call Carl Shields ("Shields") to testify that co-conspirator Sam confessed to him that he had stabbed complainant.  (Docket Entry No.2, page 45).  Petitioner claims that Shields's testimony would have defeated the State's theory that petitioner was the primary actor, which petitioner contends is the theory upon which he was convicted.  (*Id.*).

Petitioner's trial counsel attested in state habeas proceedings that petitioner informed him during a jail interview that Sam confessed to Shields that Sam had killed complainant.  *Ex parte Manning*, Application No.WR-70,328-01, page 103.  Petitioner's trial counsel further attested that petitioner's mother and sister put him in touch with Shields and that he spoke with Shields on two occasions.  *Id.*  Trial counsel indicated that he did not remember if he felt Shield's testimony would be helpful.  *Id.*  The state habeas courts found trial counsel's affidavit credible and that petitioner had failed to show that his trial counsel rendered constitutionally ineffective assistance.  *Id.*, pages 139-40.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  To prevail on such claim, petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.  *Id.*

Petitioner attached to his memorandum the "affidavit" of Shields, wherein he states that petitioner's trial counsel questioned him about Sam's confession on the night of the robbery-murder.  (Docket Entry No.2-1, page 12).  Shields states that he informed trial counsel that he was aware that petitioner wanted him to testify and that he was willing to testify.  Shields states that counsel told him that he would have to wait in the hall until counsel called him to testify.  Shields indicates that he waited in the hall during petitioner's trial proceedings.  *Id*.

The record shows that petitioner's trial counsel informed the state district court that he had three witnesses and that he "originally intended to call a guy, a very short witness, that was at the apartment when they came back that night."  *Manning v. State*, No.01-04-00866-CR, Reporter's Record, Volume 9, page 128.  After the State rested, trial counsel called an investigating officer and questioned him about the inconsistent statements that co-conspirator Sam had made to the officer over a hearsay objection that was sustained.  *Id.* at 134.  Trial counsel then questioned McNeil about her letters to petitioner; thereafter, trial counsel recalled the officer and informed the state district court that he wanted Sam brought into the court room for the officer to identify.  *Id*., Reporter's Record Volume 10, page 49.  The officer identified Sam and the state district court granted a brief recess and ordered the jury to the jury room.  *Id*. at 51-52.  Trial counsel told the state district court that he needed "to check the hall for one second and then put something on the record."  *Id*. at 52.  Thereafter, trial counsel informed the state district court that petitioner did not intend to testify.  *Id*. at 52-53.   Both sides then rested.  *Id*. at 53.

Petitioner claims that based on this record a rational person would presume that trial counsel checked the hall to see if Shields was available to testify.  (Docket Entry No.2). Petitioner maintains that if Shields was not present, his trial counsel should have informed the

state district court of his need to locate Shields.  (*Id.*).  Petitioner claims that if jurors had found petitioner's video-taped confession to be involuntary, then Shields's testimony that Sam was the killer would have enabled them to find petitioner guilty of a lesser-included offense.  (*Id.*).

Shields does not indicate that he was actually in the hall and available to testify when petitioner's trial counsel checked the hall.  Moreover, as previously discussed, the evidence was sufficient to convict petitioner as a co-conspirator to capital murder; petitioner presents nothing to show that Shields's testimony would have negated such theory.

Accordingly, petitioner fails to overcome the state habeas court's finding that his trial counsel rendered constitutionally effective assistance of counsel.

### c. Inadequate Cross-Examination

Finally, petitioner claims that his trial counsel failed to thoroughly cross-examine two police officers during the hearing on petitioner's motion to suppress.  (Docket Entries No.10, page 10; No.2, pages 47-51).  Petitioner claims that had trial counsel questioned the officers more vigorously about the circumstances surrounding the video-taped confession, the state district court would have concluded that the confession was involuntary and granted his motion to suppress.  (*Id.*).  Petitioner specifically complains that his trial counsel did not question the officers about issues that were brought to light during trial, such as petitioner denying his role in the robbery-murder in his written statement, the tactics employed by the two officers to pit the co-conspirators against each, and the inconsistent statements made by Sam.  (*Id.*, pages 47-48). Petitioner contends that had the state district court heard such testimony at the pretrial hearing, it would have found the officers' actions rendered petitioner's video-taped confession involuntary. (*Id.*, page 48).

Petitioner's trial counsel attested in state habeas proceedings that in reviewing his notes, he believed that he did the best job he knew how to do in cross-examining the State's witnesses concerning petitioner's confession.  *Ex parte Manning*, Application No.WR-70,328-01, page 103.  The state habeas courts found the affidavit credible and concluded that petitioner had failed to show that counsel rendered ineffective assistance.  *Id.*, page 140.

The record reflects that petitioner's trial counsel provided reasonably effective assistance of counsel during the suppression hearing that was adequate to inform the state district court about the circumstances surrounding the statements given by petitioner.  Detective E.R. Rogge testified at the suppression hearing that once at the police station, petitioner was given the statutory warnings and petitioner waived his rights; petitioner completed a written statement, which was admitted into evidence for the suppression hearing. *Manning v. State*, No.01-04-00866-CR, Reporter's Record, Volume 2, pages 18-20, 22.  Thereafter, Rogge made contact with petitioner three to four times, once after photographing Sam and his girlfriend.  *Id*., pages 23-24. Rogge attests that he showed the photographs to petitioner, who identified Sam.  *Id*., page 24. After Rogge informed petitioner that he knew of his relationship to Sam, petitioner indicated to Detective Urban that petitioner wanted to give another statement and Urban took that statement. *Id*., page 24-25.

On cross-examination, petitioner's trial counsel questioned Rogge about the time that petitioner was taken into custody and when the video-taped confession concluded, noting that petitioner had been in custody over six hours at the time the videotape began.  *Id*., pages 27-28.  Trial counsel queried if petitioner had asked for an attorney or to call his family.  *Id*.  Trial counsel asked if petitioner was told that he was being video-taped.  *Id.*, page 29.

Detective Kenneth Wayne Urban testified at the suppression hearing that he made contact with petitioner around 2:45 p.m. during petitioner's interview with Detective Rogge. *Id.*, page 46. Urban typed petitioner's written statement as petitioner was speaking. *Id.*, page 49. Urban took petitioner's video-taped confession around 7:00 p.m. that night. *Id.* Urban attested that petitioner waived his rights after he was given the warnings and that petitioner was not threatened or coerced in any way to give the statement. *Id.*, page 50.

On cross-examination, trial counsel questioned Urban as to whether the videotape was filmed continuously or with intermittent breaks. *Id.*, page 52. He again asked about length of time that petitioner was in custody and whether petitioner knew he was being videotaped. *Id.*, pages 52-53. He also asked where the camera was located, noting that it was hidden in the door frame of the video interview room. *Id.*, page 53.

Trial counsel then called petitioner to testify regarding the circumstances surrounding the video-taped confession. *Id.* at 61-64. Petitioner testified that he had indeed asked for an attorney, that he did not know that he was being video-taped, that the officers promised to let him go if he told them what they wanted to know, and that during the time he was in custody he did not have anything to eat. *Id.*

After the hearing and after reading the written statement and viewing the video-tape, the state district court found the written statement to be admissible. With respect to the video-taped statement, the state district court found that petitioner was in custody and talking before he was given his statutory warnings; therefore, the state court found that petitioner's video-taped statements were voluntary after the warnings were given and only statements following the warnings were admissible. *Id.*, Volume 3, page 4. The state district court further

found that petitioner did not request an attorney and the officers did not make any promises to petitioner.  *Id.*

        The record also reflects that neither the state district court nor the jurors heard any probative evidence at trial that was not admitted at the suppression hearing or that would have shown such police overreaching that would render petitioner's confession inadmissible.  At trial, Detective Rogge testified that between the time that petitioner gave his written statement and the video-taped confession, another police unit had arrived at the jail with Sam and his girlfriend and the officers were talking with them.  *Id.*, Volume 8, page 84.  Rogge testified that he took pictures of them and later showed petitioner the photographs and asked him if he knew Nickie.  *Id.*  Petitioner then identified Sam.  *Id.*  Petitioner's trial counsel objected because Rogge's testimony was not "covered in the other hearing."  *Id.*  At the bench, trial counsel indicated that he was objecting to other statements made by petitioner and not the written statement and video-taped statement.  *Id.*, page 85.  The state district court instructed the jury to disregard petitioner's statements.  *Id.*. pages 86-87.  Rogge later testified that he went into the interview room a couple of times and showed petitioner pictures of the other individuals who were in custody.  *Id.*, page 89.

        On cross-examination, trial counsel had Rogge read aloud petitioner's written statement.  *Id.*, pages 91-99.  Trial counsel then questioned Rogge about the circumstances surrounding the statement and the video interview.  *Id.*, pages 99-100.  He questioned him about the time that petitioner was in custody, the one-way mirror in the interrogation room, the location of the camera, whether petitioner was informed that he was being videotaped, and whether McNeil had been arrested or charged with anything related to any drug offense, robbery, or murder.  *Id.*, pages 101-03.

Detective Urban testified on cross-examination that petitioner denied committing the robbery and/or murder in his written statement.  *Id.*, Volume 9, pages 15-16  Urban further testified on cross that from 4:30 to 7:00 pm., he and other detectives were going between two rooms telling petitioner and other people that had been arrested or detained what each other had said.  *Id.*, page 16.  Thereafter, petitioner decided to give the video-taped confession.  *Id.*, pages 16-17.  On re-cross, petitioner's trial counsel questioned Urban as to whether he and the other detectives were giving the suspects an opportunity to say their side of the story.  *Id.*, page 19.

During the defense's case-in-chief, petitioner's trial counsel questioned Detective Todd Blankenburg, who attested that the police interviewed Sam three times and that the statements Sam gave were inconsistent.  *Id.*, page 134.  Blankenburg indicated that initially and on a limited basis, Detective Rogge was sharing information gained from Sam with other defendants to try to get them to confess.  *Id.*, pages 134-135.

Petitioner fails to show that his trial counsel's performance was deficient or prejudicial from this record.  Accordingly, petitioner fails to overcome the state habeas court's finding that his trial counsel rendered constitutionally effective assistance of counsel.

Respondent is entitled to summary judgment on petitioner's ineffective assistance of trial counsel claim.

## 2. Appellate Counsel

Petitioner complains that his appellate counsel rendered constitutionally ineffective assistance because he failed to raise prosecutorial misconduct on direct appeal. (Docket Entry No.1).  Petitioner claims that the prosecutor engaged in misconduct during closing arguments by mischaracterizing the testimony of McNeil regarding the size of the knife that petitioner carried, by speculating that petitioner's motive in killing complainant was the fear of

identification and retaliation by complainant's drug suppliers, and by calling petitioner a predator because petitioner remarked that complainant's friend survived the attempted murder.  (Docket Entry No.2).

The same two-pronged standard for evaluating ineffective assistance claims against trial counsel announced in *Strickland* applies to complaints about the performance of counsel on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding a petitioner arguing ineffective assistance by his appellate counsel must establish both  his appellate counsel's performance was objectively unreasonable and there is a reasonable probability that, but for appellate counsel's objectively unreasonable conduct, the petitioner would have prevailed on appeal).  Thus, the standard for evaluating the performance of counsel on appeal requires inquiry into (1) whether appellate counsel's performance was deficient, *i.e.,* whether appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) whether appellate counsel's allegedly deficient performance "prejudiced" petitioner, *i.e.,* whether there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of petitioner's appeal would have been different.  *Id.*  An appellate counsel who files a merits brief need not and should not raise every non-frivolous claim but, rather, may select from among them in order to maximize the likelihood of success on appeal.  *Id*. at 288.  The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail is the hallmark of effective appellate advocacy.  *Smith v. Murray*, 477 U.S. 527, 536 (1986).  Nonetheless, appellate counsel is obligated to research relevant facts and law or to make an informed decision that certain avenues will not prove fruitful.  *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2004) (finding a reasonable attorney has an obligation to research relevant facts and law or make an informed decision that certain avenues will not be fruitful).  Where, as in petitioner's case,

appellate counsel presented, briefed, and argued, albeit unsuccessfully, one or more non-frivolous grounds for relief on appeal, petitioner must satisfy both prongs of the *Strickland* test in connection with his claims of ineffective assistance by his appellate counsel.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 & 482 (2000) (holding the dual prongs of *Strickland* apply to complaints of ineffective appellate counsel and recognizing, in cases involving "attorney error," the defendant must show prejudice).

The state habeas courts found that petitioner failed to allege sufficient facts to show that the prosecutor's argument was improper and that his appellate counsel rendered ineffective assistance of counsel.  *Ex parte Manning*, No.WR-70,328-01, page 140.  Petitioner fails to overcome such findings in this habeas proceeding for the reasons to follow.[3]

First, petitioner's trial counsel did not voice a contemporaneous objection to the prosecutor's misstatement with respect to the length of the knife blade as required by the state rules of procedure; thus, the issue was not preserved for appeal.  *See* TEX. R. APP. P. 33.1(a); *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992).  Therefore, appellate counsel's performance was not deficient or prejudicial because he did not raise the unpreserved error on direct appeal.  Even if preserved, the Court has found that such misstatement did not amount to prosecutorial misconduct and that counsel was not ineffective because he voiced no objection.

Likewise, petitioner's trial counsel did not object to the prosecutor's characterization of petitioner as a predator.  The prosecutor argued, as follows in pertinent part:

> And maybe one of the more offensive things in this whole trial is when he
> was watching TV and, with regard to that young man standing right there,
> "Damn, he lived."  That person.  That predator made a comment about the

---

[3] *See United States v. Wise*, 221 F.3d 140, 152-53 (5th Cir. 2000) (describing federal review of claims regarding prosecutorial misconduct and considerations in determining whether remarks prejudice defendant's substantial rights).

> suffering of this boy and said, "Damn, he lived."  What kind of person—
> how callous to say that, how could you leave him just bleeding in his own
> vomit and blood?  What kind of person can walk away and do that?  This
> defendant.

*Manning v. State*, No.01-04-00866-CR, Reporter's Record, Volume 10, pages 99-100.

Again, the error was not preserved for appeal and no deficient performance is shown. Even if preserved, such characterization has been upheld by the Texas courts when such is a reasonable deduction from the evidence.  *See Burns v. State*, 556 S.W.2d 270, 285 (Tex. Crim. App. 1977) (reference to defendant as an "animal" was supported by the evidence).  Petitioner presents nothing to show that the evidence in this case did not support the prosecutor's characterization.

With respect to petitioner's claim that the prosecutor engaged in misconduct by misstating the record regarding petitioner's motive, the record shows the prosecutor made the following statements, in pertinent part:

> What about this as a motive?  The chain or the commerce from this case or
> through that dope house as what's been demonstrated is marijuana from
> Mexico.  It's shipped from Mexico into this house.  From this house, it's
> distributed in pounds, usually, and sold to other dealers who break it down
> into personal use amounts, ounce bags, and deliver it to other dealers.
> This is a major cog in the distribution of marijuana from Mexico, okay.  It
> is hundreds of pounds.  We're talking about a lot of marijuana moving
> from that house.
>
> Think about whoever is in Mexico that may want some kind of
> explanation for why money has stopped, maybe they might come over and
> ask what's going on.

*Manning v. State*, No.01-04-00866-CR, Reporter's Record Volume 10, page 97.  Petitioner's trial counsel objected that such argument was "way outside the record from this."  *Id*.  The prosecutor responded that he thought it was a reasonable inference from the evidence and the

state district court overruled the objection.  *Id.*, pages 97-98.  The prosecutor then continued to

argue, as follows, without objection:

> Maybe those bigger fish in this stream of commerce, and that marijuana business, maybe that's what he's hiding from, people that aren't so careful about the defendant's rights like these officers were.
>
> If you don't care about being ID'd by anybody at the scene of the crime then why are you so careful of taking that phone which has the Caller ID, which has your phone number plainly on it three times?  Why take it if you don't care if they ID you?  Well, of course, he's taking it to hide his identity.  It supports his motive of absolutely, "leave no witnesses."

*Id.*, page 98.

Because the identity argument was not preserved, no deficient performance is

shown by appellate counsel's failure to raise it on direct appeal.  Likewise, no deficiency is

shown by the prosecutor's speculation that petitioner's motive for killing was fear of retaliation.

Both of prosecutor's statements regarding petitioner's motive for killing complainant are

permissible under Texas law.  *See McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985)

(noting under Texas law, "it is well settled that the prosecutor may argue his opinions concerning

issues in the case so long as the opinions are based on the evidence in the record and not as

constituting unsworn testimony").   The record reflects after the robbery-murder, petitioner

returned to his home with a white cordless telephone.  *Manning v. State*, No.01-04-866-CR,

Reporter's Record Volume 7, page 100.  Petitioner states in his video-taped confession that he

took complainant's cordless telephone because his number was on the caller ID.  *Id.*, Volume 12,

Exhibit 34A at page 32.    He also stated in the video-taped confession that he and his co-

defendant discussed what complainant might do after the robbery, and petitioner reasoned that

complainant would not go to the police because he dealt drugs, nor would complainant go to

petitioner's residence because complainant did not know where petitioner lived.  *Id.*, at pages 16-

27

17.  Petitioner also confessed that after the first stabbing, his co-conspirator said he had to kill both men because they had seen his face.  *Id*., page 27

Moreover, the trial transcripts contain evidence that complainant had a large amount of marijuana in his house for sale and distribution and that he and a friend regularly purchased the drugs in Mexico.  *Id*., Volume 6, pages 30-31,  Volume 7, pages 37-38, 50-52, 56-57, 59-60, 68-69.  The record also shows that petitioner was a dealer who purchased marijuana from complainant for sale and distribution to others.  *Id.*, Volume 7, pages 41, 78-81.

Because the record reflects evidence of petitioner's concern with identification and evidence of the scale of drug trafficking in which petitioner was a participant,  petitioner fails to show that the prosecutor's statements were impermissible jury argument.

Absent a showing that petitioner's appellate counsel failed to raise a valid claim, petitioner does not demonstrate that he received ineffective assistance of counsel on appeal.  He has therefore failed to demonstrate the state habeas court's rejection of his ineffective-assistance of counsel claim was contrary to, or involved an unreasonable application of clearly established federal law.  Respondent is entitled to summary judgment on this ground.

C. Procedural Bar

Respondent also moves for summary judgment on petitioner's claims that the state district court erred in overruling his motions to suppress his video confession claim and for new trial, and petitioner's claim that the prosecutor engaged in improper argument because such claims are procedurally barred.  (Docket Entry No.18).  The state habeas court found that such claims were "record claims" that should have been raised on direct appeal and not on habeas review.  *Ex parte Manning*, Application No.WR-70,328-01, page 139.  The Texas Court of Criminal Appeals adopted the state habeas court's findings.  *Id.* at action taken page.

Federal review of a claim is procedurally barred if the last state court to consider the claim clearly based its denial of relief on procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-04, (1991).  It is well settled under Texas jurisprudence that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal. *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991).  The federal courts recognize Texas's procedural default rule concerning the requirements that record claims must be raised on direct appeal. *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005).  Because petitioner did not raise such claims on direct appeal and the last court to consider such claims expressly and unambiguously based its denial of relief on a state procedural default, his claims are barred absent a showing of cause and prejudice or a fundamental miscarriage of justice.

To show cause for the procedural default, the prisoner must establish that some objective factor external to the defense impeded his efforts to comply with the state procedural rule. *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996) (citing *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)).  "Cause" factors may include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel-in the constitutional sense-on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997).

Petitioner has challenged the ineffectiveness of his appellate counsel in the pending habeas action but not on grounds regarding counsel's failure to appeal the denial of his motions to suppress or for new trial.  Petitioner, however, has challenged the effectiveness of his

29

appellate counsel because he did not appeal the prosecutor's alleged misconduct during closing arguments.  (Docket Entries No.2, No.10).

A petitioner who fails to establish cause for the procedural default may be entitled to habeas relief if he shows that imposition of the procedural bar would constitute a miscarriage of justice.  *Coleman*, 501 U.S. at 750.  However, petitioner has not demonstrated that the failure to consider the defaulted ineffective assistance of counsel issues in this proceeding will result in a fundamental miscarriage of justice.  Therefore, this exception to the procedural bar does not apply, and the merits of his claims may not be considered in a federal habeas proceeding.

Accordingly, respondent is entitled to summary judgment on this issue.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248

(5th Cir. 2000).  A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding and appellate courts, the Court ORDERS the following:

1.  Respondent's motions for summary judgment (Docket Entries No.12, No.18) are GRANTED.

2.  Petitioner's petition for federal habeas relief is DENIED.

3.  A certificate of appealability is DENIED.

4.  This habeas action is DISMISSED with prejudice.

5.  All other pending motions, if any, are DENIED.

It is so ORDERED.  The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 9th day of December, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE